IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| 255 LATIMER DELI, INC., et al., : | |
| Plaintiffs, : | |
| vs. : | CIVIL NO. 07-3853 |
| DARRELL CLARKE, et al., : | |
| Defendants. : | |

**RUFE, J.**                                                                                          **July 16, 2008**

## MEMORANDUM OPINION AND ORDER

This is an action seeking monetary damages for race discrimination pursuant to 42 U.S.C. § 1983, for violation of the Equal Protection clause of the Fourteenth Amendment to the United States Constitution.[1]  Currently before the Court is Defendants' Motion to Dismiss the Complaint, pursuant to Article III of the United States Constitution and Federal Rule of Civil Procedure 12(b)(6), as well as Plaintiff's Response in Opposition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

For purposes of this Motion to Dismiss, the Court must accept all facts in the Complaint and all inferences to be drawn therefrom as true.[2]  Plaintiffs are five Asian-American-owned delicatessens that applied for, and were denied, licenses to sell malt or brewed alcohol beverages ("beer licenses") for consumption off the premises.  Another Plaintiff is the Asian-American Licensed Beverage Association ("AALBA"), whose purpose is to promote a "common and legal

---

[1] U.S. Const. Amend. XIV, § 1.

[2] Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).

business free from unlawful and discriminatory governmental actions."[3]  Defendants are City Councilman Darrell Clarke ("Clarke") and the City of Philadelphia.  Plaintiffs assert one claim: that they were discriminated against on the basis of their race by Defendants during the process of applying for beer licenses.

Pennsylvania's Act 39 of 2005 amended Liquor Code section 442, governing the process through which retailers may obtain a beer license.[4]  The Code provides that any business in a first class city,[5] holding such a license, must apply for a permit to continue to sell beer before October of 2005.[6]  The application procedure requires that applicants acquire an approval from the hearing board, within the City's Licensing and Inspection Department.[7]  The board consists of three persons appointed by the Mayor, subject to approval by the Philadelphia City Council ("City Council").  The board is permitted, at its discretion, to hold evidentiary hearings to determine whether to approve an application for a permit.[8]  "The hearing board must approve the request unless it finds that doing so would adversely affect the welfare, health, peace and morals of the city or its residents."[9]  If the applicant is successful at this stage, and all requirements are otherwise met, the board must approve the application, according to Pennsylvania law.

---

[3] Compl. ¶ 9.

[4] 47 P.S. § 4-442 ("Liquor Code").

[5] Compl. ¶ 11 (stating that the City of Philadelphia is a City of the First Class).

[6] 47 P.S. § 4-442 (a)(2) (the code now requires the same, but for the period ending in October of 2007).

[7] Id.

[8] Id. at § 4-442 (a)(5).

[9] Id.

In September of 2005, City Council implemented self-governing regulations for the permit application process, giving itself greater discretion in approving or denying applications.[10] Philadelphia Code § 9-2900 allows for a hearing in front of the board upon protest to a license application by any city resident or councilperson.  Approval by the board does not result in an automatic permit, as the Pennsylvania Code provides, but rather City Council gives itself the ability to reject or accept a board approval, or to make a *de novo* determination at its discretion.[11] Plaintiffs allege that only businesses receiving protests are held to hearings in Philadelphia after these regulations were implemented.  Any application without a protest is automatically approved for a permit.[12]

Plaintiffs allege that Philadelphia's City Council discriminated against Asian-American applicants during the application process, primarily by the 5th District and Councilman Clarke. Each of the five Plaintiffs' establishments were forced to participate in a hearing as a result of protests, and at least four were recommended for approval by the hearing board.[13]  Plaintiffs claim that Clarke was the sole protestor in many of these cases, with the Chief Clerk of City Council Bonita Cummings frequently testifying as the only witness against the applicants.[14] Clarke voted against all five Plaintiffs, who were subsequently denied permits by City Council. Plaintiffs allege they were then forced to file appeals, accruing the monetary damages they

---

[10] Compl. ¶ 17.

[11] Id.

[12] Id. ¶ 20.

[13] Plaintiffs state that Huong Enterprises was denied a permit, but fail to specify whether or not the hearing board recommended approval before the ultimate denial.

[14] Id. ¶ 27.

claim.[15]

In addition to the allegations presented on behalf of these five businesses, Plaintiffs claim that 147 protests were filed to the 880 applications during the September, 2005 period, 94 of which were against members of the AALBA.[16] This caused a disproportionate number of hearings and expenses for Asian-American owned businesses.[17] Furthermore, City Council denied 17 total applications despite favorable recommendations by the hearing board. Sixteen of these denials were businesses run by Asian-American owners and members of the AALBA.[18] Finally, of the 116 applicants in Councilman Clarke's district, 45 were Asian-American. Councilman Clarke filed protests to 40 of these 45 applications.[19]

Plaintiffs maintain that the disproportionate application of the license application procedure evidences discriminatory intent by Defendants. They seek monetary damages for lost profits, attorneys fees and costs of unnecessary appeals, and punitive damages against Defendant Clarke.

Defendants filed this Motion to Dismiss the Complaint, claiming: 1) Plaintiffs have failed to state a claim upon which relief can be granted with respect to all Defendants; 2) Plaintiff AALBA has not established standing to bring this suit; and 3) Defendant Clarke is immune from this lawsuit; and 4) Plaintiff Shin's Market is a sole proprietorship and has no legal right to sue.[20]

---

[15] Id. at 12.

[16] Id. ¶ 54-55.

[17] Id. ¶ 56.

[18] Id. ¶ 60.

[19] Id. ¶ 30.

[20] Defs.' Mot. at 3.

## II. DISCUSSION

### A. Legal Standard

Under settled law in the Third Circuit, a "[d]ismissal for failure to state a claim is appropriate only if it 'appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"[21] To make this determination, the Court must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom."[22] The United States Supreme Court has recently clarified this standard of review, explaining that "[a] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" without the allegation of sufficient facts.[23] A plaintiff must allege facts that "raise a right to relief above the speculative level."[24] A court may grant a 12(b)(6) motion only "if it appears to a certainty that no relief could be granted under any set of facts which could be proved."[25]

### B. Failure to State a Claim

Defendants assert that Plaintiffs fail to state a claim upon which relief can be granted with

---

[21] Worldcom, Inc. v. Graphnet, Inc., 343 F.3d 651, 653 (3d Cir. 2003) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

[22] Phillips, 515 F.3d. at 231.

[23] Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007) (internal citations omitted).

[24] Id. (internal citations omitted).

[25] D.P. Enter. Inc. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

respect to all Defendants, pursuant to Federal Rule of Civil Procedure 12(b)(6).[26] They argue that Plaintiffs have failed to show both a legal deprivation of any right, and any damages suffered.[27] Maintaining that the City followed state and local procedure during the permit application process, Defendants contend that Plaintiffs failed to allege any discrimination against them.[28] In addition, Defendants assert that Plaintiffs have failed to establish *respondeat superior* liability upon the City for Clarke's actions.[29]

To state a claim under 42 U.S.C. § 1983, Plaintiffs must allege that they were deprived of a federal or constitutional right by any person acting under color of state law.[30] Plaintiffs claim that their constitutional right to be free from racial discrimination has been violated, pursuant to the Equal Protection clause of the Fourteenth Amendment.[31] The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."[32] Where, as here, the face of the state or local law is neutral on its face, the plaintiff must plead intentional discrimination in the law's application.[33] The intent

---

[26] Defs.' Mot. at 7.

[27] Id.

[28] Id.

[29] Id. at 14.

[30] Wilson v. Russo, 212 F.3d 781, 786 (3d Cir. 2000).

[31] Compl. ¶ 63; U.S. Const. Amend. XIV, § 1.

[32] U.S. Const., Amend. XIV, § 1.

[33] Village of Arlington Heights v. Metro. Hous. Devel. Corp., 429 U.S. 252, 265 (1977); Yick Wo v. Hopkins, 118 U.S. 356, 373 ("Though the law be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, then denial of equal justice is still within the prohibition of the Constitution").

need not be a primary factor of Defendants' actions, merely a motivating one.[34] The Supreme Court has defined the court's inquiry into invidious discrimination as "a sensitive inquiry," which requires examination of "such circumstantial and direct evidence of intent as may be available. The impact of the official action whether it 'bears more heavily on one race than another,' may provide an important starting point."[35]

Plaintiffs have alleged that Clarke's actions in protesting against 40 out of 45 Asian-American license applicants in his district resulted in a disproportionate amount of hearings and expenses for Asian-Americans.  This, without any other evidence, is sufficient to plead discriminatory purpose under Arlington Heights and Washington v. Davis.[36]  This is at least a "starting point" for the factual inquiry into discrimination under the equal protection clause.

Similarly, Plaintiffs have alleged that the City of Philadelphia, through its City Council, voted to deny 17 applications for permits, despite recommendations for approval by the hearing board.  Of these 17 applications, 16 were Asian-American applicants.  In addition, the City's regulations gave itself the ability to protest an application, and required only those businesses with protests to undergo hearings.  These allegations are sufficient to raise a question as to an "official action that bears more heavily on one race than another," and of discriminatory intent under the equal protection clause.[37]  Moreover, any arguments Defendants raise regarding respondeat superior are misplaced, as Plaintiffs have established a separate cause of action for

---

[34] Id. at 265-66.

[35] Id. at 266 (quoting Washington v. Davis, 426 U.S. 229, 242 (1976)).

[36] Id.

[37] Id.

liability based on the City's alleged discriminatory actions independent of Clarke's.[38] Defendants' Motion to Dismiss Plaintiffs claims under 12(b)(6) is therefore denied in this respect.

**C. Associational Standing**

Defendants argue that Plaintiff AALBA lacks standing to sue on behalf of and in addition to the five named Plaintiffs to this action.[39] Associational standing is rooted in Article III of the Constitution,[40] and requires plaintiffs establish an "actual injury" as a result of defendants' conduct.[41] In Warth v. Seldin, the Supreme Court laid out three requirements for associational standing: 1) the association's members would otherwise have standing to sue in their own right; 2) the interests it seeks to protect are germane to the organization's purpose; and 3) neither the claim asserted nor the relief requested requires the participation of individual members of the lawsuit.[42] The Court elaborated on Warth's third requirement in Hunt v. Washington State Apple Advertising Commission, stating that actions solely for damages to an association's members,

---

[38] See Monell v. Dept. of Social Servs., 436 U.S. 658, 690 (1978) (holding that local governments could not be held liable under a theory of respondeat superior, but rather could be held liable only when the constitutional deprivation arises from a governmental custom or practice).

[39] Defs.' Mot. at 11.

[40] Hunt v. Washington State Apple Advert. Comm'n, 432 U.S. 333, 342 (1977).

[41] Allen v. Wright, 468 U.S. 737, 756 (1984) (requiring that standing requires plaintiffs have suffered an injury in fact, or an invasion of a legally protected interest which is concrete and particularized); see also Warth v. Seldin, 422 U.S. 490, 511 (1975) (stating that an "[e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members").

[42] Warth, 422 U.S. at 511; Newark Branch, N.A.A.C.P. v. Town of Harrison, 907 F.2d 1408, 1413 (3d Cir. 1990).

rather than those requesting injunctive relief, are barred from associational standing to sue.[43]

Defendants argue that Plaintiff AALBA cannot satisfy the third requirement for associational standing under Warth because this action does not seek any injunctive relief, but rather monetary damages exclusively.[44] Plaintiffs argue that the AALBA has established an injury to itself, because it expended legal fees on behalf of its members during the appeals process.[45] While this injury may be "actual," it does not satisfy the strict requirements for associational standing. The Court agrees with Defendants, and is bound by the law of Hunt and Warth.[46] In an action solely for damages, where the individual plaintiffs seek lost profits and legal expenses to be paid directly to them, an association cannot maintain and injury in fact. Absent an injury in fact, Plaintiffs cannot establish standing under Article III.[47] Because Plaintiffs' allegations fail to satisfy the third requirement, analysis of the other two requirements is unnecessary, as an association must meet all three to establish standing. Defendants motion to dismiss is granted in this respect.

### D. Councilman Clarke's Immunity

Defendants argue that Councilman Clarke is immune from this § 1983 suit.[48] They

---

[43] Hunt, 432 U.S. at 343 ("If the association 'seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind'") (quoting Warth, 422 U.S. at 513).

[44] Defs.' Mot. at 13.

[45] Pls.' Resp. at 12.

[46] Hunt, 432 U.S. at 343.

[47] Id.

[48] Defs.' Mot. at 15.

contend that Clarke was acting within his duties as a Councilman, and that he merely exercised "advocacy in fulfilling his role to the constituents he served."[49] Defendants assert that because Clarke did not harass, attack, intimidate or berate Plaintiffs, Plaintiffs have failed to plead intentional discrimination under the equal protection clause.[50]

In Davis v. Scherer, the Supreme Court held that a city official may not be immune from suit when a plaintiff seeks damages for the violation of a statutory or constitutional right, and shows that those rights were clearly established at the time of the alleged violation.[51] To survive this motion to dismiss, Plaintiffs must merely plead that Clarke violated an established constitutional right.[52] Plaintiffs have alleged that Clarke violated their rights under the equal protection clause of the Constitution, a right that was clearly well-established at the time of this alleged violation. This allegation is sufficient for purposes of this Motion to Dismiss. Defendants Motion in this respect is denied.

**E. Shin's Market**

Defendants argue that Plaintiff Shin's Market should be dismissed as a party to this suit because "Shin's Market" is a trade name of a sole proprietorship, rather than a legal entity.[53]

---

[49] Id.

[50] Id.

[51] 468 U.S. 183, 197 (1984); accord Engolf v. Witmer, 526 F.3d 104, 109 (3d Cir. 2008).

[52] Phillips, 515 F.3d at 242 ( "Although it is important to resolve qualified immunity questions at the earliest possible stages of litigation, the importance of resolving qualified immunity questions early 'is in tension with the reality that factual disputes often need to be resolved before determining whether defendant's conduct violated a clearly established constitutional right'") (quoting Curley v. Klem, 298 F.3d 271, 277-78 (3d Cir. 2002)).

[53] Defs.' Mot. at 16.

Defendants argue that sole proprietorships, without a named owner, have no legal right to sue.[54] Plaintiffs concede that Shin's Market is a sole proprietorship, and have indicated that the caption should be amended to read "Dong Hong Shin, d/b/a/ Shin's Market."[55] This concession makes Defendants' Motion moot in this respect.

## CONCLUSION

Plaintiffs have sufficiently pleaded their claims under 42 U.S.C. § 1983 and the equal protection clause of the Fourteenth Amendment to survive Defendants' Motion to Dismiss. Defendants' Motion is denied with respect to the § 1983 claim. Plaintiff AALBA has failed to establish associational standing under Article III of the Constitution, and is thus dismissed as a party to this Action. Plaintiffs have sufficiently pleaded that Defendant Clarke violated Plaintiffs' clearly established constitutional right to be free from racial discrimination. Defendants' Motion to Dismiss is denied in this respect.

An appropriate Order follows.

---

[54] Id.

[55] Pls.' Resp. at 14.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **255 LATIMER DELI, INC., et al.,** : | |
| : | |
| Plaintiffs, : | |
| vs. : | CIVIL NO. 07-3853 |
| : | |
| **DARRELL CLARKE, et al.,** : | |
| : | |
| Defendants. : | |

**ORDER**

      **AND NOW**, this 16th day of July 2008, upon consideration of Defendants' Motion to Dismiss [Doc. No. 5], and Plaintiffs' Response in Opposition [Doc. No. 6], it is hereby **ORDERED** that Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part, as follows:

      1. Defendants' Motion to Dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6) is **DENIED**;

      2. Defendants' Motion to Dismiss Plaintiff AALBA from participating as a named party in this action is **GRANTED**;

      3. Defendants' Motion to Dismiss Plaintiffs' claim against Defendant Clarke based on qualified immunity is **DENIED**;

      4. Parties shall file a stipulation to **AMEND** the caption of this case to state "Dong Hong Shin, d/b/a/ Shin's Market" in place of Plaintiff "Shin's Market."

      It is so **ORDERED.**

        **BY THE COURT:**
        /s/ Cynthia M. Rufe

        _____
        **CYNTHIA M. RUFE,  J.**